STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF PENDER     FILE NO. 15 - CVS _____

| | |
|---|---|
| WILLIAM L. BLOODWORTH and ) <br> MADELYN S. BLOODWORTH ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITRIN SAFEGUARD INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) | **VERIFIED COMPLAINT** <br> (Jury Trial Demanded) |

Plaintiffs, complaining of the Defendant, allege and say as follows:

1. Plaintiffs, William L. ("Bill") and Madelyn S. Bloodworth, are husband and wife and are citizens and residents of Dade County, Florida.

2. Upon information and belief, Defendant Unitrin Safeguard Insurance Company ("Unitrin") is a property and casualty insurance carrier transacting business in the State of North Carolina, including the solicitation of customers in and procurement of insurance contracts in North Carolina. This Court has jurisdiction over Defendant Unitrin and service upon Defendant Unitrin is authorized by statute to be made as by law provided to the Commissioner of Insurance for the State of North Carolina.

3. This matter arises out of a contract of insurance issued by the Defendant to the Plaintiffs in North Carolina.

4. This Court has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 1-75.4, and venue is proper in Pender County, North Carolina pursuant to N.C. Gen. Stat. § 1-79 and/or § 1-76.

5. On August 22, 2012, William L. Bloodworth and Madelyn S. Bloodworth entered into a contract of insurance with Defendant to procure homeowners' insurance coverage for their residence located at 9040 Highway 210 E, Rocky Point, North Carolina ("Residence").

6. The policy issued by the Defendant to the Bloodworths for their Residence was a HO 00 03 (10 00) policy, bearing policy number PZ 126908 ("Policy").

7. The Policy provides multiple lines of coverage including property coverage on the Residence with a blanket policy limit of $980,000.

8. The Bloodworths paid all premiums required to be paid under the Policy including an additional premium for a Specified Additional Blanket Property Limit Coverage endorsement (HB 32 20 (08 04)) to the Policy for additional insurance of 25% of the blanket property limit for a total amount of insurance of 125% of the blanket policy limit.

9. The Policy remained in full force and effect during the occurrence of all matters and things hereinafter described.

10. On December 14, 2012, the Bloodworths' Residence was destroyed by a fire.

11. The Bloodworths notified Unitrin of the fire and began the insurance claim process.

12. Unitrin assigned David Bonanni as the adjuster for the claim. Throughout the claim adjustment process Mr. Bonanni repeatedly represented to the Bloodworths that their losses exceeded policy limits, lulling the Bloodworths into an expectation that Unitrin would accurately, fairly and timely pay their claim.

13. Unitrin issued personal property claim payments to the Bloodworths on December 14, 2012 and December 28, 2013 in the amount of $5,000 each.

14. On February 18, 2013, Bill and Madelyn were examined under oath by Unitrin's counsel at which time the Bloodworths answered questions presented by Unitrin's counsel for nearly six hours before a court reporter who made transcripts of the proceedings.

15. Bills and Madelyn, their three children and four surviving pets were displaced after the fire, moving three times between various temporary housing.

16. On March 29, 2013, more than three months after the fire, Unitrin issued a claim payment for additional living expenses ("ALE") in the amount of $27,414.79.

17. On April 16, 2013, Unitrin issued an additional personal property claim payment to the Bloodworths in the amount of $10,000.00.

18. At that time, more than four months after the devastating fire that destroyed the Bloodworths' home and personal possessions, Unitrin had only paid the Bloodworths a total of $47,414.79.

19. On April 18, 1013, Unitrin finally issued a "coverage determination" that the Bloodworths' claim would be paid as a covered loss under the Policy.

20. On April 29, 2013, Unitrin issued a claim payment for dwelling, landscaping and other structure losses in the amount of $584,604.89.

21. Meanwhile, the Bloodworths continued to work with their public adjuster, Southern Loss Consultants, to document their claimed losses to satisfy Unitrin's onerous demands for evidence of their losses, including submitting over 800 pages of supporting documentation of their purchase and ownership of personal property destroyed in the fire.

22. Believing that Unitrin was going to pay the their claim in a timely manner now that a coverage determination had been made and believing that the claim payments would be for policy limits, the Bloodworths elected to replace their Residence by buying another house in North

Carolina. On or about May 6, 2013, the Bloodworths entered into an Offer to Purchase and Contract a replacement house located in Wilmington. The Bloodworths paid a $10,000.00 initial earnest money deposit, conducted a home inspection, obtained a survey and ordered furniture and furnishings for the replacement house.

23. On June 16, 2013, Unitrin issued a payment for personal property losses in the amount of $294,142.48.

24. The Bloodworths were frustrated that it took six months for Unitrin to issue the personal property payment and, even more so, were shocked by Unitrin's significant under-valuation of their losses.

25. Unitrin wrongfully undervalued the Bloodworths claims as follows:

|  | Replacement Cost ("RCV") | Actual Cash Value ("ACV") |
|---|---|---|
| Dwelling, Landscaping & Other Structures | $618,676.05 | $585,604.89 |
| Personal Property | $577,208.83 | $314,142.48 |
| ALE |  | $38,000.17 |

26. Because Unitrin substantially and intentionally undervalued their claim, Bill and Madelyn were forced to cancel the purchase contract on their replacement house on or about June 19, 2013, losing their $10,000.00 initial earnest money deposit as well as the costs incurred for the home inspection, survey and other expenses associated with their planned replacement home.

27. The Bloodworths continued to work diligently to provide Unitrin with additional documentation to supporting their claim; however, Unitrin wrongfully responded that the documentation was insufficient.

4

28. Due to Unitrin's failure to pay the true value of their claim, on or about May 16, 2014, with the assistance of counsel, the Bloodworths invoked the appraisal provision of the Policy.

29. On January 27, 2015, an appraisal award was issued upon the mutual agreement of the Bloodworths' appraiser and Unitrin's appraiser without having to involve the umpire.

### APPRAISAL AWARD

|  | RCV | ACV |
|---|---|---|
| Dwelling, Landscaping & Other Structures | $672,089.76 | $626,677.91 |
| Contents | $870,550.94 | $544,094.34 |
| ALE |  | $95,641.31 |

30. The ACV under the appraisal award for all coverages (including ALE) totals $1,266,413.56. The RCV under the appraisal award (including ALE) totals $1,638,282.01.

31. Prior to appraisal, Unitrin has paid the plaintiffs a total of $936,747.54. The appraisal award exceeded Unitrin's ACV determination and claim payments by $328,366.02, confirming Unitrin's drastic under-valuation of the Bloodworths' losses on an ACV basis, with an even greater disparity in the RCV computations.

32. Unitrin then unilaterally further adjusted the appraisal award downward, denying a portion of the ALE computed by the appraisers and limiting the dwelling, other structure and personal property claim to a cap of $1,029,000 ($980,000 blanket limit plus $49,000 in additional insurance for landscaping).

33. On or about March 24, 2015, some twenty seven months after the fire, Unitrin issued an additional claim payment in the amount of $92,252.46, stating that by this final payment it had now paid its maximum liability under the Policy of $1,029,000.

5

34. Bill and Madelyn have continued to seek payment for damage to their Residence and personal property that was caused by the fire and covered by the Policy.

35. After the fire and before filing this lawsuit, the Bloodworths fully cooperated with Unitrin in the claim process and complied with all material obligations of the Policy.

36. Unitrin had a fiduciary duty to act in good faith.

37. Unitrin was required to know the true value of the property insured before issuing the Policy.

38. Unitrin issued the Policy based upon an extremely under-calculated Dwelling replacement value of $490,000.

39. Unitrin's bad faith claim processing includes its:

  (a)  Refusal to pay the Bloodworths' claim;

  (b)  Financial motivation to delay payment and under-value the Bloodworths' claim; and

  (c)  Refusal of attempts in good faith to effectuate a prompt, fair and equitable settlement of the Bloodworths' claim.

## FIRST CAUSE OF ACTION
### Declaratory Judgment

40. Plaintiffs incorporate by this reference all of the allegations in the foregoing paragraphs with the same force and effect as if fully set forth herein again.

41. Unitrin denied coverage for $50,891.25 of ALE awarded by the appraisers.

42. Unitrin further capped total coverage at $1,029,000 and refused to pay the amount awarded by the appraisers.

43. Unitrin denies any further liability to the Bloodworths under the Policy.

44. The Bloodworths seek payment of the remainder of the appraisal award amount.

6

45. The Bloodworths elected to replace their Residence by purchasing another house within the state of North Carolina.

46. The Specified Additional Blanket Property Limit Coverage endorsement increased the blanket property limit by 25% to $1,225,000.

47. By virtue of the foregoing, an actual controversy exists between the parties and the Plaintiffs seek the Court's construction of the Policy and declaration of the Plaintiffs' rights and the Defendant's liability pursuant to N.C. Gen. Stat. Chapter 1, Article 26, the Uniform Declaratory Judgment Act.

## SECOND CAUSE OF ACTION
Breach of Contract

48. Plaintiffs incorporate by this reference all of the allegations in the foregoing paragraphs with the same force and effect as if fully set forth herein again.

49. Unitrin materially breached the contract of insurance described herein by:

 (a) Unreasonably failing to pay the full amounts owed for all covered losses caused by a fire on December 14, 2012 that severely damaged the Residence;

 (b) Intentionally delaying resolution of the Bloodworths' claim without just cause; and

 (c) Drastically under-valuing the Bloodworths' claim.

50. As a result of Unitrin's breach Plaintiffs are entitled to damages in excess of Ten Thousand Dollars ($10,000.00).

## THIRD CAUSE OF ACTION
### Unfair and Deceptive Trade Practices

51. Plaintiffs incorporate by this reference all of the allegations in the foregoing paragraphs with the same force and effect as if fully set forth herein again.

52. Unitrin's failure to pay for all covered damages and wrongful refusal to pay the amount of money owed to the Bloodworths pursuant to the Policy constitute unfair and deceptive acts and/or omissions.

53. Unitrin's act of selling insurance, and denial of certain moneys owed pursuant to the Policy, as described in this Complaint, affected commerce.

54. The acts, omissions, and practices of Unitrin, including its agents, employees, supervisors, underwriters, managers, directors, and officers, complained of herein and to be further determined during discovery, were unfair, deceptive and had the tendency to deceive.

55. Unitrin's actions, as outlined in the Complaint and to be further determined during discovery, are unfair and deceptive acts or practices in the business of insurance as defined by N.C. Gen. Stat. § 58-63-15(11).

56. Unitrin's actions, as set forth above and to be further determined during discovery, constitute unfair and/or deceptive trade practices under the provisions of N.C. Gen. Stat. § 75-1.1.

57. Upon information and belief, the acts and omissions of Unitrin, and its agents, managers, supervisors and employees, constitute violations of N.C. Gen. Stat. § 58-63-15(11) Unfair Claim Settlement Practices. Unitrin's actions constituted unfair and deceptive trade practices, in, but not limited to, the following ways:

   (a) Not attempting in good faith to effectuate prompt, fair and equitable settlement of the Bloodworths' claim, in which liability had become reasonably clear;

8

(b) Compelling the Bloodworths to institute litigation to recover amounts due under the Policy by offering substantially less than the amounts ultimately owed to the Bloodworths; and

(c) Attempting to settle the Bloodworths' claim for less than the amount to which a reasonable man would have believed he was entitled.

58. Under North Carolina Law, at all times relevant, Unitrin, its agents, managers, supervisors and employees, had a duty not to engage in any trade practice which is defined in Article 63, Unfair Trade Practices of Chapter 58 of the North Carolina General Statute, or determined pursuant to Article 63 to be an unfair or deceptive act or practice in the business of insurance. N.C. Gen. Stat. § 58-63-10.

59. Pursuant to N.C. Gen. Stat. § 75-16, Bill and Madelyn are entitled to recover treble damages from Unitrin.

60. Pursuant to N.C. Gen. Stat. § 75-16.1, Bill and Madelyn are entitled to recover reasonable attorney fees from Unitrin, due to Unitrin's unwarranted refusal to fully resolve the matter which forms the basis of this suit.

61. As a result of the aforementioned unfair and deceptive trade practices, the Plaintiffs are entitled to receive from the Defendant an amount in excess of Ten Thousand Dollars ($10,000.00).

62. Independent of Chapter 58, Unitrin's actions violate Chapter 75 of the North Carolina General Statutes and constitute unfair or deceptive trade practices in violation of Chapter 75, entitling the Plaintiffs to damages in excess of Ten Thousand Dollars ($10,000.00), plus treble damages, attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### Bad Faith

63. Plaintiffs incorporate by this reference all of the allegations in the foregoing paragraphs with the same force and effect as if fully set forth herein again.

64. Unitrin unreasonably denied payment for all covered damages incurred by the Bloodworths as a result of the December 14, 2012 fire.

65. Unitrin had a duty to reach an agreement for payment of covered losses with Bill and Madelyn pursuant to the Policy, and pay damages covered under the Policy.

66. Unitrin acted in bad faith in at least one or more of the following ways:

    (a) Unreasonably withholding payment of moneys owed for remaining covered losses in violation of the Policy's terms and conditions despite the Bloodworths' compliance with the same;

    (b) Failing to reach an agreement with the Bloodworths regarding payment for the covered losses; and

    (c) Otherwise acting in bad faith in failing to make all payments owed and in mis-handling the Bloodworths' claim under the Policy.

67. The actions and/or failures to act on the part of Unitrin were willful, wanton, malicious and without justification or excuse to further the improper objectives of Unitrin and with conscious intent to injure Plaintiffs and/or with disregard for the interests of Plaintiffs to the prejudice and detriment of Plaintiffs in violation of common law.

68. As a result of the aforementioned bad faith, the Plaintiffs are entitled to receive from the Defendant an amount, including punitive damages, in excess of Ten Thousand Dollars ($10,000.00) plus interest at the highest legal rate from the date of the filing of this lawsuit.

## FIFTH CAUSE OF ACTION
### Punitive Damages

69. Plaintiffs incorporate by this reference all of the allegations in the foregoing paragraphs with the same force and effect as if fully set forth herein again.

70. As a result of Unitrin's conduct described in this Complaint, including the Defendant's willful and wanton acts, the Bloodworths are entitled to receive punitive damages from the Defendant.

71. Unitrin's willful and wanton acts were a direct and proximate cause of the Bloodworths' financial injury claimed herein.

72. As a result of the aforementioned Defendant's willful and wanton acts, Plaintiffs are entitled to receive from the Defendant an amount, including punitive damages, in excess of Ten Thousand Dollars ($10,000.00) plus interest at the highest legal rate from the date of the filing of this lawsuit.

**WHEREFORE**, the Plaintiffs, Bill and Madelyn Bloodworth, respectfully pray to the Court:

1. Enter an Order Pursuant to N.C. Gen. Stat. Chapter 1, Article 26, construing the Policy and declaring the Plaintiffs' rights to further payment;

2. That they have and recover from the Defendant an amount in excess of $10,000.00;

3. That the damages awarded to Plaintiffs for unfair and deceptive trade practices be trebled pursuant to N.C.G.S. § 75-16;

4. That Plaintiffs recover reasonable attorney fees from the Defendant for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-16.1;

5. That the damages awarded to Plaintiffs include punitive damages in excess of Ten Thousand Dollars ($10,000.00);

6. That the costs of this action be taxed against the Defendant, including prejudgment interest and a reasonable attorney's fee as by law provided;

7. That the Plaintiffs have a trial by jury on all issues so triable; and

8. That the Plaintiffs have such other and further relief as may be just and proper.

This the 7th day of December, 2015.

LAW OFFICES OF AMOS & KAPRAL, LLP

By: _____
Dawn A. Hanzlik-Hexemer
North Carolina Bar No. 45316
T. Dean Amos
North Carolina Bar No. 14024
Attorneys for Plaintiffs
14 Third Avenue NE
Hickory, NC 28601
Telephone: (828) 855-3152
Facsimile: (828) 855-3154

## VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF CATAWBA

William L. and Madelyn S. Bloodworth, first being duly sworn by law, deposes and says that they are the Plaintiffs in the foregoing action and that they has read the foregoing Verified Complaint and that the same is true of their own knowledge except as to those matters and things therein stated upon information and belief, and as to those, they believes them to be true.

*William L. Bloodworth*
WILLIAM L. BLOODWORTH

*Madelyn S. Bloodworth*
MADELYN S. BLOODWORTH

SWORN TO AND SUBSCRIBED before me this the 13th day of NOV, 2015.

*Gisselle Alonso*
NOTARY PUBLIC
My Commission Expires:

GISSELLE ALONSO
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF178470
Expires 5/1/2017